IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TAMARA ELISE RUBIN**, | Case No. 3:19-cv-01377-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **THE STATE OF OREGON**, **KRIS KALANAGES**, **MICHAEL GLENN**, **KAREN ERTEL**, **MARK KLEYNA**, and **JOHN/JANE DOE**, | |
| Defendants. | |

Zachary R. Duffly, Duffly Law, LLC, 6723 SE 16th Avenue, #82151, Portland, OR 97202. Attorney for Plaintiff.

Kenneth C. Crowley and Tracy Ickes White, Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301-4096. Attorneys for Defendants.

**IMMERGUT, District Judge.**

      This matter is before the Court on Defendants' Motion for Summary Judgment. ECF 78. Plaintiff brings claims against Defendants Kalanges, Glenn, and Kleyna under 42 U.S.C. § 1983 for Fourth Amendment violations; against Defendants Kalanges, Ertel, and Glenn under 42 U.S.C. § 1983 for Fourteenth Amendment Due Process violations; against Defendants Kalanges and Glenn for malicious prosecution under the Fourth Amendment; against Defendant State of

PAGE 1 – OPINION AND ORDER

Oregon for state law abuse of process; and against Defendants Kalanges and Glenn for state law malicious prosecution. ECF 51. Oral argument was held by videoconference on June 28, 2022. ECF 92.

This Court grants Defendants' Motion for Summary Judgment as to all claims and dismisses the action. Plaintiff's claims are variously time-barred (those based on Defendant Kalanges' analysis), subject to absolute immunity (those based on Defendants Kalanges' and Glenn's grand jury testimony), or unsupported by the evidence in the record (those based on Defendant Kalanges' alleged withholding of exculpatory evidence or Defendants' ulterior motives).

## STANDARDS

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

PAGE 2 – OPINION AND ORDER

## BACKGROUND

Plaintiff was the executive director of the nonprofit Lead Safe America Foundation ("LSAF") through part of 2016. ECF 75 at ¶ 1. Defendant Kleyna was at all relevant times an Assistant Attorney General ("AAG") in the Charitable Activities Section of the Oregon Department of Justice ("DOJ"). *Id*. at ¶ 3. Defendant Kalanges was at all relevant times a Financial Investigator in the DOJ Charitable Activities Section. ECF 51 at ¶ 6. Defendant Ertel was at all relevant times an Investigator with the Oregon Department of Human Services ("DHS"). *Id*. at ¶ 7. Defendant Glenn was at all relevant times a Criminal Fraud Investigator for DHS. *Id*. at ¶ 8.

The DOJ has statutory authority to investigate and enforce the Oregon Unlawful Trade Practices Act ("OUTPA"), the Oregon Charitable Trusts and Corporations Act ("OCTCA"), and the Oregon Charitable Solicitations Act ("OCSA"). ECF 75 at ¶ 2. In 2016, the DOJ's Charitable Activities Section began to investigate potential OUTPA, OCTCA, and OCSA violations by LSAF. *Id*. at ¶ 3. As part of this investigation, Defendant Kleyna issued a Civil Investigative Demand ("CID") to Plaintiff and the Board of LSAF seeking certain documents and information. *Id*. The CID stated that any questions should be directed to Defendant Kalanges. ECF 51 at ¶ 26. Based on the records produced by LSAF, Defendant Kalanges produced a "Payments To/For Rubins Analysis" which concluded that Plaintiff and her family received approximately $450,000 from LSAF between 2011 and 2016. *Id*. at ¶ 28–29. Based on this cash flow analysis and the "volume of transactions occurring between an officer of the organization and the organization," Defendant Kalanges requested additional information from Plaintiff. ECF 79, White Decl., Ex. 1, at 6. Plaintiff told Defendant Kalanges that she and her husband "had not

kept very good records," but that they "had loaned [money] to [LSAF] . . . and the organization [was] repaying it." *Id.*

In May or June 2016, Defendant Kalanges forwarded his analysis to DHS, because the volume of the transactions between LSAF and Plaintiff and the lack of a meaningful accounting system indicated that the directors were not fulfilling their fiduciary duties. ECF 75 at ¶ 4; ECF 79, White Decl., Ex. 1, at 13–14. In June 2016, Defendant Glenn began an administrative investigation into Plaintiff and her family's eligibility for state benefits they had received. ECF 75 at ¶ 5. Defendant Glenn then forwarded his investigation to the DHS Overpayment Writing Unit. *Id.* at ¶ 6.

On October 5, 2017, Plaintiff emailed Defendant Kleyna letters from herself, her then-attorney, and the IRS about an IRS audit of Plaintiff's taxes. *Id.* at ¶ 7. The IRS letter stated that the audit had led to no change in Plaintiff's tax liability. *Id.* On November 10, 2017, Plaintiff's counsel emailed Defendants Kleyna and Kalanges materials exchanged between Plaintiff, her counsel, and the IRS. *Id.* at ¶ 10. Plaintiff's counsel sent a subsequent email containing the password to access the documents. *Id.* at ¶ 11. November 10, 2017 was the celebrated legal holiday for Veteran's Day. *Id.* at ¶ 12. On November 13, 2017, Defendant Kalanges wrote to Plaintiff's counsel that he had accessed the documents. *Id.* at ¶ 13. Also on November 13, 2017, a Grand Jury issued an indictment charging Plaintiff with seven counts of theft and two counts of welfare fraud. *Id.* at ¶ 14. The indictment was ultimately dismissed on May 10, 2018. *Id.* at ¶ 15.

On June 12, 2018, the DHS Overpayment Unit sent notice to Plaintiff and her family notifying them of a determination of overpayment of state benefits; Plaintiff and her family requested a contested case hearing. *Id.* at ¶ 16–17. On August 21, 2018, DHS sent Plaintiff and

her family a Contested Case Notice reducing the amount of overpaid benefits. *Id*. at ¶ 18. On February 12, 2019, DHS amended the Contested Case Notice again reducing the amount. *Id*.

A contested case hearing convened on May 14, 2019. *Id*. at ¶ 19. But the case settled before testimony was taken, dismissing part of the overpayment and reducing the remainder to $3,500. *Id*. at ¶ 19–20. Under the agreement, Plaintiff and her husband would work with DHS to establish a payment plan. *Id*. at ¶ 20. The Administrative Law Judge ("ALJ") incorporated the settlement in a Final Order affirming the overpayment as reduced in the settlement. *Id*. at ¶ 21. The Final Order allowed for a request for rehearing or reconsideration within 60 days. *Id*. at ¶ 22. Plaintiff and her family members petitioned for rehearing or reconsideration, which was denied; they did not appeal the denial. *Id*. at ¶ 23–24.

## DISCUSSION

### A. Statute of Limitations

Plaintiff's claims are time-barred to the extent that they are based on Defendant Kalanges' analysis or his forwarding that analysis to DHS. This lawsuit was filed on August 28, 2019. ECF 1. The parties agree that the relevant accrual date when Plaintiff knew of or had reason to know of her claim, is August 28, 2017 and that the relevant statute of limitations is two years. ECF 78 at 8; ECF 83 at 14. When this Court assessed Defendants' statute of limitation claims in the motion to dismiss, it was unclear at what point Plaintiff knew of Defendant Kalanges' allegedly faulty analysis. *See* ECF 27 at 5. But it is now undisputed that Defendant Kalanges forwarded his analysis to DHS in either May or June 2016, ECF 75 at ¶ 4, and that Defendant Kalanges had met with Plaintiff *before* forwarding his analysis, ECF 79, White Decl., Ex. 1, at 8–10. Thus, Plaintiff's claim of Fourth Amendment violations based on Kalanges' analysis or forwarding of that analysis to DHS are time-barred.

PAGE 5 – OPINION AND ORDER

**B. Personal Participation**

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under Section 1983, a plaintiff must allege facts from which a court may infer "(1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law." *Campbell v. Washington Dep't of Soc. Servs*, 671 F.3d 837, 842 n.5 (9th Cir. 2011) (citing *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987)).

Generally, "[l]iability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citation omitted). Accordingly, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant" in the deprivation alleged. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)); *see also King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (noting that "[s]tate officials are not subject to suit under section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights"). "A plaintiff must allege facts, not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194.

Plaintiff does not allege that Defendants Kleyna, Glenn, or Ertel personally participated in the alleged constitutional deprivations. Accordingly, these Defendants are entitled to summary judgment on the Section 1983 claims for Fourth Amendment violations (Count One), Fourteenth

Amendment due process violations (Count Two), and malicious prosecution[1] under the Fourth Amendment (Count Three).

The only allegations pertaining to Defendant Kleyna are that he signed the CID, ECF 51 at ¶ 26, that he was copied on emails in October 2017 from Plaintiff's attorney relating to the IRS documents, *id.* at ¶ 46, and that on December 21, 2017, he contacted Plaintiff's attorney to request password access to the QuickBooks files included in the IRS materials, *id.* at ¶ 60. Plaintiffs do not allege that Defendant Kleyna helped Defendant Kalanges perform the allegedly deficient financial analysis or that he had any reason to believe the analysis was inaccurate. And while Plaintiff alleges that her former attorney "ma[de] sure [Kleyna] understood the exculpatory nature of the [IRS] audit," *id.* at ¶ 46, this is insufficient to show that Kleyna knew that the IRS audit was exculpatory. *See* ECF 80, Grant Decl., Exs. 1–4 (emails to Defendant Kleyna stating that the IRS audit showed that "no excess benefit transactions were found"); ECF 79, White Decl., Ex. 1, at 11 (portion of Defendant Kalanges' deposition stating that the QuickBook records relied on by the IRS contained errors).

As to Defendant Glenn, Plaintiff alleges that he did not "review[] or substantiate[] Defendant Kalanges' analysis, but instead [he] accepted and adopted Kalanges' conclusions that the transactions identified in the Analysis constituted 'income' for the purposes of calculating Plaintiff and her family's benefit eligibility determination." ECF 1 at ¶ 36. But Plaintiff does not allege that Defendant Glenn knew or had any reason to know that Defendant Kalanges' analysis was faulty. And while Defendant Glenn admitted that he was aware of the IRS materials, the

---

[1] Count Three is not labeled as a Section 1983 claim in the amended complaint. *See* ECF 51 at 26. But Plaintiff's response to the motion for summary judgment makes it clear that she is bringing her federal malicious prosecution claim under Section 1983. *See* ECF 83 at 25 ("Courts look to state law when analyzing claims of malicious prosecution under 42 USC § 1983.").

PAGE 7 – OPINION AND ORDER

record evidence shows that he believed that the IRS investigation "had nothing to do with [the DHS] investigation." ECF 79, White Decl., Ex. 2 at 22.[2]

As to Defendant Ertel, there is no allegation that she testified before the grand jury, received the IRS documents from Plaintiff's attorney, or participated in the criminal prosecution. There is also no allegation that she believed, or had reason to believe, that Kalanges' analysis was false.

## C. Grand Jury Testimony Is Protected by Absolute Immunity

Plaintiff's claims are also barred to the extent that they are based on Defendant Kalanges' and Kleyna's allegedly false sworn statements. This Court has already dismissed Plaintiff's claims based on grand jury testimony and ordered Plaintiff to strike all references to grand jury testimony. ECF 27 at 5. Plaintiff complied with this order in form by deleting the words "grand jury" in her third amended complaint. *See* ECF 51 at ¶¶ 80–81. But Plaintiff identified no other "sworn statements" made by Defendants and, in her briefing, tacitly acknowledges that this portion of her claim is still based on the grand jury testimony. *See* ECF 83 at 30 (arguing that, while grand jury testimony is protected, "non-testimonial acts such as fabricating or suppressing physical or documentary evidence or suppressing the identities of potential witnesses" falls outside the scope of that protection (quoting *Paine v. City of Lompoc*, 265 F.3d 975, 983 (9th Cir. 2001))). Plaintiff's briefing misses the mark. The third amended complaint bases its claim—at least in part—on Defendant Kalanges' alleged *making* of false sworn statements. This Court

---

[2] Plaintiff also alleges, and Defendant Glenn admits, that he testified before the grand jury. ECF 51 at ¶ 55; ECF 82, Glenn Decl., at ¶ 2. But, as explained below, Glenn is absolutely immune from suit based on his grand jury testimony, and there is no evidence that he believed that Kalanges' analysis was false or that the IRS material, which he had not reviewed before testifying, was exculpatory.

PAGE 8 – OPINION AND ORDER

reiterates that any claims based on grand jury testimony have already been dismissed and otherwise grants summary judgment on those claims.[3]

### D. First Claim for Fourth Amendment Violations

Plaintiff alleges that Defendants Kalanges, Glenn, and Kleyna violated her Fourth and Fifth Amendment rights. ECF 51 at 20. Specifically, Plaintiff alleges that her arrest was based on Defendant Kalanges' "unsubstantiated, false and misleading Analysis," that Defendant Kalanges provided false and misleading evidence to the District Attorney, that Defendant Kalanges withheld exculpatory evidence, and that Defendant Kalanges made false sworn statements. *Id*. at ¶ 80–81.

As explained above, Plaintiff makes no allegations about Defendants Glenn and Kleyna in connection with the First Claim. As a result, summary judgment is granted on the First Claim for Defendants Glenn and Kleyna.

#### 1. Legal standards

Plaintiff has articulated that she is proceeding with her Fourth Amendment claim on a theory of false arrest. ECF 83 at 24. "To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant 'deliberately or recklessly made false statements or omissions that were material to the finding of probable case.'" *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011) (quoting *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004)).

---

[3] Indeed, at oral argument, Plaintiff's counsel conceded that the claims based on grand jury testimony were barred and that, to the extent references to that testimony remained in the amended complaint, it was in error.

### 2. Analysis

Plaintiff alleges that "Defendant Kalanges was aware that his Analysis was unsubstantiated, false and misleading based on the IRS Audit *prior to* either making statements in support of a warrant for Plaintiff's arrest or providing false statements to secure Plaintiff's indictment." ECF 51 at ¶ 82 (emphasis added). But there is no genuine dispute that Defendant Kalanges did not review the results of the IRS audit until after he had testified before the Grand Jury—indeed, he reviewed the IRS materials on the day that the Grand Jury returned an indictment. Defendant Kalanges testified before the Grand Jury on November 1 and 9, 2017. ECF 79, White Decl., Ex. 1, at 11. Plaintiff's attorney sent the IRS materials to Defendant Kalanges on November 10, 2017 but, because it was a legal holiday, Defendant Kalanges did not access the documents until November 13, 2017. ECF 75 at ¶¶ 10–13. The Grand Jury indicted Plaintiff on November 13, 2017. *Id*. at ¶ 14. Whether Plaintiff's allegations refer to Defendant Kalanges forwarding his analysis to DHS—which occurred in May or June 2016—or testifying in front of the Grand Jury—which occurred on November 1 and 9, 2017—is immaterial. Defendant Kalanges had not accessed the IRS materials, which Plaintiff claims made him aware that his analysis was incorrect, at either point. In addition, to the extent that Defendant Kalanges was aware that the IRS audit had occurred before he testified, he believed the IRS audit had "nothing to do with" his investigation. ECF 79, White Decl., Ex. 2 at 22.

Because Defendant Kalanges did not possess the IRS audit during the relevant timeframes and there is no evidence that he believed it was relevant to the DOJ investigation, this Court grants summary judgment on the First Claim for Fourth Amendment violations.

**E. Second Claim for Fourteenth Amendment Due Process Violations**

Plaintiff alleges that Defendants Kalanges, Ertel, and Glenn, and Kleyna violated her Fourteenth Amendment substantive due process rights.[4] ECF 51 at 22–23. Plaintiff accuses Defendants of "falsify[ing], manipulat[ing] and withhold[ing] exculpatory evidence" and claims that Defendant Kalanges "kn[ew] that he lacked probable cause." *Id*. at 23.

As explained above, Plaintiff makes no allegations about Defendants Ertel, Glenn, and Kleyna in connection with the Second Claim. Thus, summary judgment is granted on the Second Claim for Defendants Ertel, Glenn, and Kleyna.

    **1. Legal standards**

To sustain a Fourteenth Amendment claim on a theory of deliberate fabrication of evidence, a plaintiff must show either that "(1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that [s]he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc)). But "[m]ere careless[ness] is insufficient" to establish deliberate fabrication, "as are mistakes of tone." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (internal quotation marks and citations omitted).

To establish a Fourteenth Amendment violation based on the withholding of exculpatory evidence, a plaintiff must show (1) "the suppression by the prosecution of evidence favorable to

---

[4] In Plaintiff's Response to Defendant's Motion for Summary Judgment, she apparently seeks to recast this claim as a violation of her "procedural *and* substantive Due Process rights." ECF 83 at 23 (emphasis added). Plaintiff's operative complaint only alleges a substantive due process violation; any procedural due process claim is barred.

an accused upon request" and (2) that the evidence "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).[5]

For any substantive due process claim, the touchstone is whether the alleged "official conduct shocks the conscience." *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (internal quotations marks and citation omitted).

2. **Analysis**

Defendant Kalanges' conduct does not "shock the conscience," and there is no evidence that he fabricated evidence. The record shows that Defendant Kalanges prepared his cash flow analysis based on the financial information he had available. Plaintiff alleges that Defendant Kalanges failed to update his analysis once he learned of the IRS audit. But Defendant Kalanges testified that he believed that the IRS audit had "nothing to do with" his investigation. ECF 79, White Decl., Ex. 2 at 22. What is more, Defendant Kalanges did not learn of the IRS audit or have access to that information until after he had completed his analysis, sent it to Defendant Glenn, and testified to the grand jury. As Defendants note, the most Plaintiff has shown here is some type of negligence in failing to update the cash flow analysis, not the deliberate indifference needed to sustain a Fourteenth Amendment claim.

---

[5] Plaintiff cites Ninth Circuit Civil Model Jury Instruction 9.33A for the proposition that a Fourteenth Amendment violation occurs when "favorable evidence has been deliberately or recklessly withheld from the prosecutor." ECF 83 at 18. While it is true that Instruction 9.33A refers to "suppress[ing] evidence . . . from the prosecutor and the defense," the cases cited in that instruction all refer to a *police officer's* duty to provide exculpatory evidence to the prosecutor. *See Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018); *Tennison v. City & Cnty. of S.F.*, 570 F.3d 1078, 1087, 1089 (9th Cir. 2009); *see also Carillo v. Cnty. of L.A.*, 798 F.3d 1210, 1219 (9th Cir. 2015).

To the extent that Plaintiff's claim is based on Defendant Kalanges' alleged withholding of exculpatory information, this Court notes that no *Brady* duty existed. Defendant Kalanges was neither the prosecutor nor a police officer investigating this case. *See Stocker v. Bloomfield*, No. 1:19-cv-00105-CL, 2021 WL 1912374, at *7 (D. Or. May 12, 2021) (noting that *Brady* requirements apply to "prosecutors and law enforcement"). Nor does *Brady* require that a prosecutor—or anyone else—provide exculpatory evidence to a grand jury. *See United States v. Williams*, 504 U.S. 36, 53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.").

Finally, this Court notes that *Brady* generally requires that exculpatory evidence be turned over to the defense. *Stocker*, 2021 WL 1912374, at *7. Plaintiff herself provided the alleged exculpatory information to Defendant Kalanges, so there was no need for it to be turned back over to her. *See Raley v. Ylst*, 444 F.3d 1085 (9th Cir. 2006), *amended by* 470 F.3d 792 (9th Cir. 2006), *cert. denied sub nom. Raley v. Ayres*, 552 U.S. 833 (2007) (finding no *Brady* violation because the plaintiff "possessed the salient facts regarding the existence of the records that he claims were withheld").[6]

---

[6] Plaintiff argues that "[t]he availability of particular statements through the defendant himself does not negate the government's duty to disclose." *Tennison*, 570 F.3d at 1091 (quoting *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000)). But *Tennison* referred to an inapposite fact pattern where the government failed to disclose information from a witness helpful to the defense. *See id.* (distinguishing *Raley* because one would have awareness of their own medical history). This Court finds that this case is more analogous to *Raley*: as with medical records, Plaintiff would have been substantially aware of the contents of the IRS audit materials, and therefore, the materials did not require disclosure from the government.

PAGE 13 – OPINION AND ORDER

Because there is no sign that Defendant Kalanges fabricated evidence or had a *Brady* duty to disclose the information in the IRS audit, this Court grants summary judgment on the Second Claim for Fourteenth Amendment violations.

### F. Third and Fifth Claims for Malicious Prosecution under the Fourth Amendment and Oregon State Law

Plaintiff brings her Third Claim for malicious prosecution under federal law against only Defendants Kalanges and Glenn. ECF 51 at 26. Plaintiff brings a Fifth Claim for malicious prosecution under state law but does not clarify against which Defendants the claim is brought. *Id.* at 28. In any event, because Plaintiff names Defendants Kalanges and Glenn under the Fifth Claim, *id.* at 29, and given the federal malicious prosecution claim, this Court construes the Fifth Claim as also being brought against Defendants Kalanges and Glenn.

#### 1. Legal standards

To prove a claim for malicious prosecution under Oregon law, a plaintiff must show "(1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution." *Blandino v. Fischel*, 179 Or. App. 185, 190–91 (2002). In order to show malicious prosecution under Section 1983, a plaintiff must establish "(1) the elements of the state law tort; and (2) an intent to deprive the plaintiff of a constitutional right." *Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1205 (D. Or. 2011) (internal quotation marks and citation omitted).

#### 2. Analysis

For Defendant Kalanges, there is no evidence that he referred the case for prosecution. Rather, Defendant Kalanges performed the cash flow analysis and was a grand jury witness. "It

PAGE 14 – OPINION AND ORDER

is not enough that [the defendant] appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution." *Waldner v. Dow*, 129 Or. App. 197, 202 (1994) (internal quotations marks and citation omitted). Plaintiff has not alleged, and the evidence does not show, that Defendant Kalanges insisted on prosecution.

As for Defendant Glenn, Plaintiff has shown no evidence of malice. In the context of malicious prosecution, malice is "the existence of a primary purpose other than that of securing an adjudication of the claim." *Sabet v. Intel Corp.*, No. CV 08-746-MO, 2009 WL 10693825, at *3 (D. Or. Jan. 22, 2009) (quoting *Perry v. Rein*, 215 Or. App. 113, 125 (2007)). While malice is usually a question reserved for the jury, here Plaintiff has provided no evidence at all that Defendant Glenn had a motivation other than the adjudication of the claims against Plaintiff. *See id.* ("While mindful that malice is usually a fact issue to be decided by a jury, in this case there is no evidence in the record that Intel had any reason to initiate the criminal proceedings other than to stop Ms. Sabet from contacting Intel."). This Court acknowledges that Plaintiff alleges, although in connection with her Fourth Claim for abuse of process under state law, that the Defendants' motivation was "silencing Plaintiff's advocacy on behalf of children potentially exposed to lead poisoning." ECF 51 at 27. But Plaintiff offers no evidence at all to support this assertion. At most, Plaintiff has offered one excerpt from a newspaper article which stated that an LSAF board member "did not dismiss the Rubins' theory that the state probe and board discontent could be the result of a corporate conspiracy to discredit them." ECF 84, Duffly Decl., Ex. 13, at 54. This board member is admittedly sympathetic to Plaintiff. *Id.* ("I have enormous sympathy for her because she's become sort of a lightning rod"). A single statement that the state

PAGE 15 – OPINION AND ORDER

investigation generally *may have* resulted from the lead industry's efforts to silence Plaintiff is insufficient as a matter of law to impute malice to Defendant Glenn personally.[7]

Accordingly, this Court grants summary judgment on the Third and Fifth Claims for malicious prosecution as to both Defendants Glenn and Kalanges.

## G. Fourth Claim for Abuse of Process under Oregon State Law

### 1. Legal standards

"Abuse of process is the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause. Thus, to prevail on an abuse of process claim, a plaintiff must prove some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Singh v. McLaughlin*, 255 Or. App. 340, 355 (2013) (internal quotation marks and citations omitted).

### 2. Analysis

Plaintiff alleges state law abuse of process against the State of Oregon because "Defendants continued the IRS audit,[8] DOJ and DHS investigations, criminal prosecution and DHS administrative process." ECF 51 at 27. Plaintiff further alleges that the State of Oregon acted with the ulterior purpose of "silencing Plaintiff's advocacy on behalf of children

---

[7] This Court also notes that the same article quotes Plaintiff as saying, "While I cannot be 100 percent certain, it is my distinct impression at this point that the lead industry is behind a complaint to the Oregon DOJ that has resulted in an escalating series of events designed to shut down . . . my advocacy work." *Id*. at 52. Even if Plaintiff were correct that a representative of the lead industry filed the complaint that sparked the DOJ's investigation, this does not cast doubt on any of Defendant's conduct in investigating that complaint.

[8] Neither the State of Oregon nor any of the named Defendants could continue the IRS audit, which was conducted by a federal agency. Summary judgment is therefore granted as to this aspect of Plaintiff's abuse of process claim without further consideration.

PAGE 16 – OPINION AND ORDER

potentially exposed to lead poisoning, and . . . covering up the fact that the[] proceedings were based on Defendant Kalanges's false and unsubstantiated Analysis, rather than trying to discover the truth or recoup monies from Plaintiff." *Id*.

As explained above, there is no non-speculative evidence that Defendants were motivated in any way to silence Plaintiff's advocacy. Even if Plaintiff is correct that some shadowy figure in the lead industry was responsible for the initial complaint made to the DOJ, there is no evidence at all that any Defendant (i) knew that the complaint was submitted to damage Plaintiff's reputation, (ii) had any reason to believe that the complaint was false, (iii) acted with ulterior purpose in investigating the complaint, or (iv) colluded with the lead industry in investigating the complaint.

Nor is there evidence that there was an attempt to "cover up" any aspect of Defendant Kalanges' Analysis or that any Defendant believed the Analysis to be false, misleading, or unsubstantiated. Defendant Kalanges performed a cash flow analysis with the data available. There is no evidence in the record showing that he, or any other Defendant, thought the cash flow analysis was incomplete or incorrect. When Defendants Kalanges and Glenn learned about the IRS audit, neither thought that the audit—which concerned Plaintiff's tax liability—affected their investigation—which concerned the Plaintiff's eligibility for state benefits.

For these reasons, this Court grants summary judgment on Plaintiff's Fourth Claim for abuse of process.

## H. Qualified immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014); *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly

PAGE 17 – OPINION AND ORDER

and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (citation omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) and *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

Plaintiff has not pointed to any law or legal rules that were clearly established at the time of any of the acts in question suggesting that the conduct here was unconstitutional. Defendants Kalanges and Kleyna began an investigation into potential statutory violations by LSAF and Plaintiff. Defendant Kalanges made a spreadsheet showing his cash flow analysis based on the information he had and gave Plaintiff a chance to provide additional information. Defendant Glenn used the spreadsheet to analyze potential DHS overpayments and submitted a report to the District Attorney. Separately, Defendant Ertel processed the DHS overpayment claim, ultimately

reaching a settlement agreement with Plaintiff that was incorporated into a final order.[9] The gravamen of Plaintiff's allegations is that, at some point, Defendants should have incorporated the IRS materials into their analyses or alerted the District Attorney to those materials. But no Defendant believed that the IRS materials were relevant to their investigation, and "Government officials are entitled to qualified immunity with respect to 'discretionary functions' performed in their official capacities." *Ziglar*, 137 S. Ct. at 1866. Qualified immunity "gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Thus, whether the IRS audit ultimately exonerated Plaintiff is immaterial; each individual Defendant is entitled to qualified immunity even if they were mistaken in failing to incorporate that information into their analyses and decision-making.

Accordingly, and for the reasons stated above, this Court grants summary judgment as to Defendants Kalanges, Kleyna, Glenn, and Ertel on the First, Second, and Third Claims for relief under Section 1983.

///

///

///

///

///

---

[9] The Final Order states that Plaintiff and her husband "incurred, and are liable to repay, an overpayment of [state] benefits." ECF 81, Ertel Decl., Ex. 2, at 5. Plaintiff requested reconsideration or rehearing, which was denied. *Id.*, Ex. 3, at 9. But Plaintiff elected not to appeal the denial. *Id.* at 3. Any claim by Plaintiff that she did not incur an overpayment of state benefits is thus barred on the grounds of issue and claim preclusion. *See Janjua v. Neufeld*, 933 F.3d 1061, 1067 (9th Cir. 2019); *United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011).

## CONCLUSION

Defendants' Motion for Summary Judgment, ECF 78, is GRANTED in full and this case is DISMISSED with prejudice.

**IT IS SO ORDERED**.

DATED this 13th day of July, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge
